UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

    Plaintiff,

v.

THE SMILE MISSION, PLLC.

    Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, James Watson ("Plaintiff") sues Defendant, The Smile Mission, PLLC, ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs under Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3.    Plaintiff is a Florida resident, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4.      Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5.      Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He sues Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff uses the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") used worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff cannot read computer materials and/or access the internet and websites for information without help from appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6.      The Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired

individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.' Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8.     Defendant, The Smile Mission, PLLC, is a Florida limited liability company, which owns and operates a dental office named "The Smile Mission" located within this District and open to the public. As such, a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, and located within this District. Defendant's merchandise and services are also offered and available to the public through its website. Defendant's dental office is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(F).

9.     As the owner, operator, and/or controller of a dental office, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns and/or operates "a professional office of a health care provider, hospital, or other service establishment," per 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

10.    Because Defendant is a dental/orthodontic office open to the public, each of Defendant's physical establishments are a place of public accommodation subject to the

requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(F), §12182, and 28 C.F.R. §36.104(2). Defendant also offers those items to the public through its website.

11.     Defendant also controls, maintains, and/or operates an adjunct website, https://thesmilemission.com  (hereinafter the "Website"). One of the functions of the Website is to provide public information about Defendant's dental office, including services, accommodations, privileges, benefits and facilities available to patrons at the physical locations. Defendant also allows the public to make appointments at its physical location through its website.

12.     Defendant's website is offered as a way for the public to become familiar with the "The Smile Mission" location, hours of operation, and other information Defendant seeks to communicate to the public. Through the website the public can learn about "The Smile Mission", services, prices, financing options, insurances plans accepted, request a virtual consultation, book an in-person appointment, as well as the ability to contact them online. The website also provides links to "The Smile Mission" Facebook, Instagram, YouTube, Linktree and Tik Tok pages to learn about pop-ups and specials. By this nexus, the website is characterized as a Place of Public Accommodation subject to Title III of the ADA, 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2).

13.     The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individual persons' homes, portable devices and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's place of accommodation. For example, the website provides a list of their services, products, locations,

and the ability to set up appointments and contact them. Defendant's website provides access to benefits of Defendant's physical locations and Plaintiff was denied those benefits when she could not access Defendant's website. Therefore, the website has integrated with and is a nexus to Defendant's brick and mortar dental office's location. Therefore, it is governed by the following provisions:

> a.    42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

> b.    42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

> c.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

> d.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with

a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

> e.   42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

> f.   42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

> g.   42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

> h.   42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

14.     As the owner or operator of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the website and the content therein, including the ability to book an appointment through the website, and contact their location.

15.     Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar dental office location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

16.     Plaintiff attempted to access and/or utilize Defendant's website to test for accessibility, to browse through the services and online information to educate himself as to "The Smile Mission" location, services, and facilities offered, at the brick and-mortar location, but was unable to, and he continues to be unable to enjoy full and equal access to the website and/or understand the content therein because numerous portions of the website do not interface with the JAWS screen reader software. Features of the website that are inaccessible to JAWS screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i.      Guideline 1.3.2 – Meaningful Sequence. Immediately upon entering the site, the screen reader begins making repeated nonsensical announcements such as "Samuell Full face Luis Samuell Take 16 IG" (as shown in the screen capture). The user can

still tab to elements on the home page and have them announced accordingly, but the screen reader continues to make the nonsensical announcements in between and during. This happens for the duration of the time spent on the home page.

ii.     Guideline 2.1.1 – Keyboard. The text in the blue banner below the videos in the 'The Smile Mission Miami' section on the home page is not accessible. Attempts to arrow down from the video to read the text below does not move focus accordingly, and tabbing moves focus to the next link below the banner.

iii.    Guideline 2.4.3 – Focus Order. Expandable FAQs are not accessible. On the FAQ webpage, tab focus moves through the FAQ category tabs above the questions displayed on the page and then immediately to the first link in the section below them. As a result, screen reader users cannot tab to or expand FAQs.

iv.     Guideline 2.4.4 – Link Purpose (In Context). The links in the 'Our Top Services' section on the home page are not given meaningful labels, so the user would not know their purpose or destination. For example, the graphic and icon links for 'Veneers' are announced as "capture link" and "link."

v.      Guideline 4.1.2 – Name, Role, Value. Clickable images in the 'Our Gallery' section on the home page are not given meaningful labels, so the user would not know their purpose. These are announced as "(long random number) link."

vi.     Guideline 4.1.2 – Name, Role, Value (2). The left/right arrow buttons used to scroll images in the carousel on the home page are announced only as "button," so the user would not know their purpose.

vii.    Guideline 1.4.5 – Images of Text. The price comparison chart found on the home page is an image of text which cannot be read with the screen reader. Arrow key navigation moves focus from the heading directly above the chart to the heading for the next section directly below it (as highlighted in the screen capture). As focus does not move over the price chart image at any point, it cannot be read with the screen reader. This is also the case for the same chart found on pricing webpages.

viii.   Guideline 1.4.5 – Images of Text (2). Pricing fliers on the All-Prices webpage (accessed via the 'Overall Prices' link in the footer) are images of text which cannot be read with the screen reader. As focus moves over these images with either tab or arrow key navigation, the screen reader announces them as "PDFs" and "links," describing the purpose of the image but not announcing any of the text displayed on it. If the user selects an image to expand it, arrow key navigation still does not move focus over the image to read it. Sighted assistance would be required to read these fliers.

ix.     Guideline 3.3.3 – Error Suggestion. Input errors are not clearly identified on the appointment booking form. If the user selects the 'Submit' button without completing

the required fields, a generic error message appears and the screen reader announces, "One or more fields have an error. Please check and try again." It is unclear which fields contain errors, and tab focus continues down the webpage into the footer instead of to any of the invalid fields.

17.     The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because dental offices are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

18.     Plaintiff continues to attempt to use the website and/or plans to continue to attempt to use the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

19.     That Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as she is unable to participate in the same browsing experience, and access to the same information, sales, and services, as provided at the Website and in the physical locations as the non-visually

disabled public.

20.     As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of his disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

a.      by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

b.      in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

c.      in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

d.      by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

e.      by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the

disabled individual (42 U.S.C. § 12182(b)(1)(B));

       f.    notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

       g.    by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

       h.    by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

    21.    As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

    22.    As the result of the barriers to communication which are present within the

website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the public.

23.     Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

24.     Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant.

25.     Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this website has complied with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

26.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs

and litigation expenses from the Defendant under 42 U.S.C. § 12205 and 28 CFR 36.505.

27.     Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

28.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, James Watson demands judgment against Defendant, The Smile Mission, PLLC, and requests the following injunctive and declaratory relief:

a.   The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b.   The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c.   The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d.   That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e.   That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time

**Watson v. The Smile Mission**
**Complaint for Injunctive Relief**

so as to allow Defendant to undertake and complete corrective procedures;

f.  That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.  An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h.  Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this October 24, 2024.

<div style="margin-left:40%">

By: */s/ Juan Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
J. Courtney Cunningham, PLLC
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*

</div>